# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| DARRIAN D. JORDAN,<br><br>      Plaintiff,<br><br>vs.<br><br>MICHAEL CARR,<br><br>      Defendant. | No. C04-0135-MWB<br><br>**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER** |

_____

On July 28, 2005, the plaintiff Darrian D. Jordan filed an Amended Complaint asserting claims against several employees of the Linn County Jail pursuant to 42 U.S.C. § 1983. Jordan alleged that while he was an inmate in the jail in 2004, the defendants denied him the right to practice his religion by not allowing him to attend church services, denying him "access to his Qur'an (holy bible)," and denying him access to a prayer rug.

On April 20, 2006, Chief Judge Mark W. Bennett entered an order granting the defendants summary judgment on all claims except Jordan's claim that jail officials did not allow him to attend church services. This claim came on for trial to the undersigned on September 21, 2006. At the commencement of the trial, Jordan stipulated that he was seeking only injunctive relief and punitive damages, and only from the defendant Michael Carr. He dismissed his claims against all other defendants.

Jordan testified in support of his claim. No other testimony was offered by the parties, although certain exhibits were admitted into the record. At the conclusion of the trial, the parties consented to jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c). Accordingly, on September 22, 2006, Chief Judge Mark W. Bennett transferred the case to the undersigned for final disposition and entry of judgment, with any appeal to be taken directly to the Eighth Circuit Court of Appeals.

The facts are simple, straightforward, and undisputed. Jordan was booked into the Linn County Jail on January 26, 2004. When Jordan was booked, he indicated to jail officials that he had no religious preference, but he requested a copy of the King James Version of the Christian Bible. He was provided with a copy of the Bible on January 28, 2004.

On July 5, 2004, Jordan requested a copy of the Qur'an and a prayer rug. These items were provided to him on July 8, 2004. Jordan later requested a no-pork diet, and asked that his religious preference be changed to Muslim.

On July 13, 2004, Jordan filed a grievance in which he stated the following:

> About a week or two ago, I requested a Quran and prayer rug from the Chaplain. When he brought them to me he was accompanied by an officer who said his name was Rob. I specifically asked both Rob and the chaplain if [I] could still attend bible study also. Rob said quote "it won't be a problem." I made sure to let them both know that if it was going to be a problem [to] allow me to attend both services (Jumah & church) or classify me as no religion with me going to bible study [then] I didn't want to be classified. My reason for that is because outside of this jail I attend both Islamic and church services. I go to the mosque and the church. They both serve the same God and it's my belief that they both are relevant so I study both. In this jail there's never an Imam to conduct Jumah. I'd rather go to bible study/church and hear the ministers and read my Quran on my own. I'm being denied my constitutional right, freedom of religion, by not allowing me to attend bible study/church service.
>
> Also, it doesn't say in the rule book that an inmate can't attend various religious services.

On July 14, 2004, a jail employee responded to the grievance, as follows:

> You requested to be classified as a Muslim and to receive a no-pork diet and prayer rug. Your request was granted. You will be allowed to attend Muslim services, but not Christian ones. Your new classification will remain until you leave the facility. Your grievance is denied.

2

The response to Jordan's grievance was based on a jail policy contained in a memorandum dated August 2, 2002 (Trial Exhibit B), which states the following:

> A. Muslim religious services (JUM'AH) on Friday will begin at 1330 hrs. instead of 1300 hrs. Those blocks that have not been allowed to shower for the day will be given that opportunity beginning at 1300 hrs., with the Muslim inmates being first to shower since this is a requirement prior to Friday (JUM'AH).
>
> B. Due to a shortage of space for Christian worship, those inmates attending Muslim services or claim Muslim as their religion will not be allowed to attend Christian services or bible study. Their attendance takes a space away from another inmate that claims to be Christian and has not attend.

An undated, unsigned "Inmate Request Form" referencing Jordan contains the following notation: "Your request for church has been denied . . . . You requested Muslim which was granted. You can appeal to the Captain – but for now you will be listed as Muslim." On July 17, 2004, apparently in response to this communication, Jordan completed and filed an Inmate Request Form, which was delivered to Captain Stuelke. In the form, Jordan stated the following:

> I was told by C.O. Rob and the chaplain that I could still attend church service if I was classified muslim. I said that if I couldn't go to church services also I didn't want to be classified as muslim. Rob said that it wouldn't be a problem. Now it is so I'd like to be unclassified as muslim.

The same day, Captain Stuelke responded as follows: "Denied, you will remain Muslim for the duration of your stay."

Jordan took no further action on his complaints until October 12, 2004, when he filed the paperwork to start this action in federal court.

3

At the trial, Jordan testified he was raised as a Christian, but later he became a Muslim. As a Muslim, he has great respect for Christian beliefs and sometimes attends Christian church services, but he is not a Christian.

The only question before the court for decision is whether Jordan's constitutional rights were violated by failing to allow him to attend both Muslim and Christian services while he was in the jail. As a threshold matter, Jordan must establish that Carr's actions substantially burdened his "sincerely held religious belief." *Weir v. Nix*, 114 F.3d 817, 820 (8th Cir. 1997) (citations omitted). "Only after the plaintiff first fulfills this duty must the government prove that its policy is the least restrictive means to further a compelling governmental interest." *Id.* Furthermore, courts must afford appropriate deference to administrators of prisons and jails in matters of institutional administration and security, and "regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349, 107 S. Ct. 2400, 2404, 96 L. Ed. 2d 282 (1987). A prisoner understandably is less able to practice his religion while incarcerated than he is when outside the jail walls. Even in circumstances where a facility offers no services for a particular religion, courts have held no First Amendment violation occurred. *See Cruz v. Beto*, 405 U.S. 319, 92 S. Ct. 1079, 31 L. Ed. 2d 263 (1972) (no constitutional violation for prison not to offer Buddhist services).

In the present case, the jail was obligated to offer Jordan a "reasonable opportunity" to exercise the religious freedom guaranteed to him by the Constitution. *Butler-Bey v. Frey*, 811 F.2d 449, 452 (8th Cir. 1987) (citing *Cruz*, 405 U.S. at 322 n.2, 92 S. Ct. at 1081 n.2). Jordan's requests for a Christian Bible, a Muslim Qur'an, and a prayer rug were accommodated, as was his request to attend religious services. The court finds that Carr gave Jordan a reasonable opportunity to exercise his religious freedom. It was not

a violation of Jordan's rights to restrict him to attending only one type of religious services. Jordan has failed to established that Carr's actions substantially burdened his sincerely held religious belief, or that his right to free exercise of religion was violated. Jordan is not entitled to injunctive relief against Carr, and is not entitled to punitive damages.

Accordingly, judgment will be entered in favor of Carr and against Jordan.

**IT IS SO ORDERED.**

**DATED** this 22nd day of September, 2006.

_____
PAUL A. ZOSS
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT